In the Matter of SWAN–FINCH OIL CORPORATION, Keta Gas and Oil Company, Swan-Finch Petro Chemical Corporation, Debtors.

George C. LEVIN, as Trustee in Reorganization of the Estates of Swan-Finch Oil Corporation, Keta Gas and Oil Company and Swan-Finch Petro Chemical Corporation, Plaintiff,

v.

RUBY TRADING CORPORATION, Lowell M. Birrell, Herbert A. Birrell, Harry Casper, Lois B. Morrill, Peter Jakobson and Peter Jakobson Corporation, Defendants.

Nos. 93046, 62 Civ. 2890.

United States District Court
S. D. New York.

Aug. 28, 1967.

See also 248 F.Supp. 537.

Everett A. Eisenberg, New York City, for trustee.

Robert M. Morgenthau, U. S. Atty., Southern District of New York, New York City, for District Director of Internal Revenue; Alvin H. Meadow, Asst. U. S. Atty., of counsel.

William G. Mulligan, New York City, for Continental Bank & Trust Co. as Receiver of Inland Empire Insurance Co.

In Consolidated Proceedings for the Reorganization of Corporations

PALMIERI, District Judge.

This plenary action was brought in 1962, pursuant to Chapter X of the Bankruptcy Act by the trustees in reorganization of certain corporations once controlled by Lowell Birrell. It was dismissed with prejudice by this Court in April, 1966, following approval of a settlement in a written opinion dated April 13, 1966. The case was settled for $175,000, $100,000 of which has already been paid, with the remaining $75,000 due to be paid in October, 1967.

The Government is now seeking to acquire, as a priority tax lien creditor of Lowell Birrell, all the monies derived from this settlement in excess of administrative expenses and legal fees. In addition to the Government, the claimant Continental Bank & Trust Company, as receiver of Inland Empire Insurance Company, asserts rights to the fund as a creditor of Lowell M. Birrell.

The bone of contention in the litigation was a luxury apartment building on Park Avenue in New York City, owned and actively managed for a number of years by Herbert A. Birrell, brother of Lowell Birrell. A substantial mortgage interest in the property was held by Lois B. Morrill, a married daughter of Herbert Birrell, who was added by the trustee as a party to the litigation. The defendants Peter Jakobson and Peter Jakobson Corporation, along with Mrs. Morrill, actively litigated the case. The Jakobsons appear to have had all their dealings with Herbert Birrell, first as his real estate manager, or "net lessee" and later, during the course of the litigation and as a result of contractual arrangements entered into in Canada, as his "contract-vendee." Neither Lowell Birrell nor Herbert Birrell became active litigants. Lowell Birrell appeared solely to challenge the qualification of the Judge and Herbert Birrell remained in Canada, answering with a general denial in December, 1965. The defendant Casper was a nominal party.

The relationships of the various parties to the litigation have been set forth in prior decisions of this Court.[1] The case has been before the Court of Appeals for the Second Circuit on three occasions: in 1963 (citation footnote 1), in 1964 (Levin v. Ruby Trading Corp., 2 Cir., 333 F.2d 592), and in 1965 (352 F.2d 508). On the last occasion the Court of Appeals, noting that the temporary receivership had been instituted nearly three years before and that no trial had yet been held, affirmed an order refusing to terminate the receivership, but directed that the receivership "be dissolved unless plaintiff brings the action to trial within four months from the date of this opinion."[2] (Supra, 352 F.2d at page 509.)

Thereafter, and as a result of intensive settlement negotiations, in some of which the Court participated at the request of the parties, settlement of the litigation was effected. It was formally approved in an opinion and subsequent order of this Court during April, 1966.

---

1. See opinion of this Court dated November 7, 1962, 213 F.Supp. 638, aff'd, 313 F.2d 140 (2d Cir. 1963), petition for rehearing denied February 13, 1963, and the opinion of this Court dated April 29, 1963.

2. The date to which reference was made was November 4, 1965.

The settlement monies came entirely from Peter Jakobson and Peter Jakobson Corporation; no other party was obliged to contribute any part of the settlement funds. Indeed Lowell M. Birrell, whose alleged property interest in the settlement fund is asserted by the Government as the basis for its claim, took no part in the settlement negotiations and at no time asserted that he had an interest in the real estate or the mortgages. Similarly, Herbert Birrell declined to take any active part in the proceedings, remaining in Canada throughout the litigation. His deposition as a witness was taken in Canada at the instance of Lois B. Morrill, Peter Jakobson and Peter Jakobson Corporation.[3]

Neither the United States nor the Continental Bank & Trust Company, which lay claim to the settlement fund, ever participated in the litigation in any way. Although the litigation has been pending for many years and has been well-publicized, their first appearance occurred after the settlement was effected and solely for the purpose of asserting claims to the settlement monies.

The decision of this Court sustains the position of the trustee that the settlement fund is not property of Lowell M. Birrell on which his creditors' rights can fasten.

The findings of fact and the conclusions of law which follow are intended to amplify what has already been said, and to demonstrate that the claims against the fund now asserted by the United States and by the Continental Bank & Trust Company lack validity and must be denied.

## FINDINGS OF FACT

### The Parties

1. This plenary action was commenced in August of 1962 by the then trustees in the reorganization proceeding pursuant to Chapter X of the Bankruptcy Act.

2. The action was pursued by successor trustees and since December 30, 1964, by George C. Levin, Esq., as sole successor trustee.

3. The original complaint was superseded by a supplemental complaint dated July 16, 1963, which was filed and served solely to add Lois B. Morrill as a party defendant.

4. Service of the complaint was effected upon all of the defendants[4] to the action except Ruby Trading Corporation and Harry Casper.

5. At the time of the commencement of the action, Ruby Trading Corporation had ceased to exist.

6. Harry Casper was a mere nominal party to some of the transactions alleged in the complaint and was not a necessary party defendant.

### The Nature and Development of the Action Since its Commencement in 1962

7. The action was founded on the theory that Lowell M. Birrell was indebted to the corporations in reorganization; that through Ruby Trading Corporation, which he dominated and controlled, he at one time held an interest in a New York City apartment house situated at 1050 Park Avenue; that his interest was transferred to his brother, Herbert A. Birrell, in fraud of creditors of the corporations in reorganization; and that the interest of Lowell M. Birrell in certain mortgages on the said premises had been transferred in fraud of creditors to Herbert A. Birrell's daughter, Lois B. Morrill.

8. From the outset, all defendants have vigorously disputed the contentions of the trustee as alleged in the complaint. Their position has been that the property in question lawfully belonged

---

3. See opinion of this Court dated July 12, 1965.

4. Herbert Birrell was served in Canada pursuant to Fed.R.Civ.P. 4(i)D. See opinion of this Court dated July 12, 1965, footnote 4.

to Herbert A. Birrell and that Lois B. Morrill was the lawful owner of the mortgages which has been assigned to her.

9. After the commencement of this action, this Court appointed John F. Kelly, Esq., as receiver, to manage the property during the pendency of the litigation. The appointment of the receiver was affirmed by the Court of Appeals, Matter of Swan Finch Oil Corp., 313 F. 2d 140 (2d Cir. 1963).

10. Subsequently two other parties were permitted to intervene. One was Peter Jakobson, who held a net lease of 1050 Park Avenue granted by Herbert M. Birrell. The other party was Peter Jakobson Corporation which became the contract vendee under a contract of sale of the premises executed by Herbert Birrell in Canada during pendency of litigation. Levin v. Ruby Trading Corp., 333 F.2d 592 (2d Cir. 1964).

11. The complaint (par. 29) alleged that the action was brought on behalf of the trustee "and on behalf of all other creditors of said Lowell M. Birrell similarly situated".

12. No creditor of Lowell M. Birrell sought to participate in the action while it was pending. Neither the United States nor the claimant Continental Bank & Trust Company ever sought to intervene.

13. The United States Government and Internal Revenue Service were fully aware of the pendency of the action and of its proceedings from its very inception.

14. The claimant, Continental Bank & Trust Company, as receiver of Inland Empire Insurance Company, and its counsel, William G. Mulligan, Esq., were aware of the pendency of the action and of the proceedings held in connection with its prosecution. At one time during the litigation, Mr. Mulligan appeared under subpoena and gave testimony in an examination before trial held in connection with the action.

15. In 1966 the trustee arrived at a settlement of the action with Peter Jakobson and Peter Jakobson Corporation, the terms of which obliged the latter to pay $175,000. No part of the settlement amount was to be furnished by Lowell M. Birrell.

16. None of the other defendants to the action took part in the settlement negotiations. Lowell M. Birrell took no part in the settlement discussions although he was a party defendant. At no time did Lowell M. Birrell assert any claim to the real estate or mortgages, or indicate that he had any interest whatsoever in the property.

17. Lowell M. Birrell was not a party to the stipulation of settlement.

18. The stipulation of settlement provided that it was entered into without acknowledgment of "any liability whatever with respect to the allegations in the complaint and supplemental complaint." (Stipulation p. 3).

### Proceedings After Settlement

19. The stipulation of settlement was subject to the approval of the Court. By order of this Court dated February 16, 1966, a hearing was directed to be held on March 21, 1966, on the question of the approval of the settlement. The trustee's petition for approval of the settlement (par. 17) pointed out that:

"The stipulation has been entered into without any admission of liability and without any prejudice as to the rights of any of the parties herein named as defendants including the right of the defendants to continue to defend this action if the settlement is not approved or if, because of and pursuant to the terms of this stipulation, this settlement is not consummated. The stipulation is made to dispose of this pending litigation which is complex, time consuming and expensive to maintain."

20. The United States Government and the Internal Revenue Service appeared at the hearing by an Assistant United States Attorney who acknowledged that the rights of the Government to the proceeds of the litigation were not then in issue but demanded to know

if there would be an opportunity at some later date for such claims to be aired. The trustee offered to hold the settlement fund separately so that the claims of other creditors of Lowell M. Birrell could subsequently be heard. The Assistant United States Attorney present at the hearing agreed to this procedure. There was no acknowledgment by anyone present at the hearing that the Government or anyone else had a valid claim against the settlement fund. (Transcript pp. 11–14)

21. This Court approved the settlement in a written opinion dated April 13, 1966, and an order approving the settlement was entered on April 19, 1966.

22. The order of April 19, 1966, approving the settlement provided, among other things, as follows:

"ORDERED, ADJUDGED AND DECREED that the Complaint and Supplemental Complaint are hereby dismissed on the merits with prejudice and without costs."

23. After the settlement was approved by the Court, the United States (Internal Revenue Service) moved for an order compelling the trustee to turn over the balance of the proceeds of settlement after deduction of administrative expenses. Its claim was grounded on the theory that the fund is the property of Lowell M. Birrell, subject to a perfected lien for income taxes (26 U.S. C. § 6321).

24. The United States was directed to give notice of its motion to all known creditors of Lowell M. Birrell so as to permit them to assert any claims they might have to the fund. The only creditor to respond to such notice was Continental Bank & Trust Company, as receiver, which thereupon asserted its claim to the balance of the settlement fund to satisfy a judgment it had obtained against Lowell M. Birrell in the United States District Court for the Eastern District of Pennsylvania for over a million and a half dollars.

25. The settlement authorized by the order of April 19, 1967, has been con-summated. $100,000 of the settlement amount has been paid. The balance of $75,000 secured by mortgage notes bearing interest is due to be paid in October of this year.

26. The receivership has been terminated and the receiver was discharged by order of this Court dated May 17, 1966. An interim allowance of $55,000 has been awarded and paid to the receiver with the balance to be fixed on the payment of the remainder of the settlement amount. The trustee is presently holding a balance of $45,000 of the settlement amount.

27. The settlement fund is, in any event, subject to the claim of the trustee for reimbursement of disbursements made in connection with the litigation and will also be subject to administrative claims and claims for attorneys' fees in connection with its creation as well as the balance of the fee to be allowed to the receiver.

## CONCLUSIONS OF LAW

*The United States Government Cannot Enforce a Tax Lien Against the Settlement Fund*

1. Section 6321 of the Internal Revenue Code of 1954 (26 U.S.C. § 6321) imposes a lien in favor of the Government "upon all property and rights to property" belonging to the person liable to pay the tax. The existence and extent of the taxpayer's property interest is a matter to be determined by state law. (Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960)).

2. The trustee's plenary action here was bottomed on Article 10 of the New York Debtor and Creditor Law, McKinney's Consol.Laws, c. 12. Section 278 of that law states in part:

"1. Where a conveyance * * * is fraudulent as to a creditor, such creditor * * * may * * *.

a. Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim * *."

The language of the statute, *prima facie*, allows a creditor to act only in his own right. He is not entitled to a judgment setting the conveyance aside completely, so as to subject any excess to the claims of other creditors. (Society Milion Athena, Inc. v. National Bank of Greece, 281 N.Y. 282, 293, 22 N.E.2d 374, 377 (1939); see also, Glassman v. Glassman, 309 N.Y. 436, 439, 131 N.E.2d 721, 723 (1956); Gruenebaum v. Lissauer, 185 Misc. 718, 57 N.Y.S.2d 137 (1945), aff'd, 270 App.Div. 836, 61 N.Y.S.2d 372 (1st Dep't 1946)). When the debt of the moving creditor is satisfied, the transfer is valid as to the debtor as well as to other persons. (Tichonchuk v. Orloff, 36 Misc.2d 623, 233 N.Y.S.2d 321 (1962), citing Bostwick v. Menck, 40 N.Y. 383, 386). It thus appears that the settlement fund is the property of the suing creditor, and that there is no other property belonging to the delinquent taxpayer to which the government lien could attach. The Government then cannot enter as beneficiary of plaintiff's recovery.

■ 3. Until a creditor sets aside a conveyance, it remains effective. The grantor cannot compel a reconveyance to himself. (T. G. W. Realties, Inc. v. Long Island Bird Stores, Inc., 151 Misc. 918, 272 N.Y.S. 602 (1934), and cases cited therein.)

■ In United States v. Lester, 235 F.Supp. 115 (S.D.N.Y.1964), the Government sought to impose a tax lien on settlement monies created by the compromise of litigation of claims which the Government contended (*inter alia*) had been fraudulently transferred to defendant Lester (plaintiff in the settled litigation) by the delinquent taxpayer. Finding that the Government had failed to establish the taxpayer's ownership or interest in the fund, Judge Bryan of this Court noted:

> "But quite apart from this, §§ 273 and 278 [Article 10, N.Y. Debtor & Creditor Law] merely provide for creditors' remedies by way of specific procedure under the terms of those sections. This is a procedure which the Government, as a creditor, might avail itself of in an action to set aside a fraudulent conveyance were it able to establish the requisites. But the sections do not affect or purport to affect the validity of the assignment as between the original parties so as to retain in the taxpayer Seagraves any right or interest in the assigned property to which the tax lien could attach." (Id. at 122)

Since the rights of the Government can rise no higher than the taxpayer's (City of New York v. United States, 283 F.2d 829 (2d Cir. 1960)), there is no property to which its lien can attach.

*Plaintiff's Suit Was Not a Class Action Entitling Either Claimant To Share in the Fund*

■ 4. Section 278 of Article 10 of the New York Debtor and Creditor Law gives a creditor the right to sue only in his own behalf and to the extent of his own claim. By claiming that the trustee's suit is in the nature of a class action (Rule 23, Fed.R.Civ.P.), intervening creditors seek to engraft federal procedure on a substantive state remedy. (See Society Milion Athena, Inc. v. National Bank, supra; Gruenebaum v. Lissauer, supra.)

5. The fact that in his broadly worded complaint the trustee sought relief "on [plaintiff's] behalf and on behalf of all other creditors of said Lowell M. Birrell similarly situated," is not dispositive. Lazar v. Towne House Restaurant Corp., Sup., 142 N.Y.S.2d 315, aff'd, 5 A.D.2d 794, 171 N.Y.S.2d 334 (2d Dep't 1958), aff'd, 6 N.Y.2d 923, 190 N.Y.S.2d 997, 161 N.E.2d 211 (1959).

The aforesaid claims of the Government and of the Continental Bank & Trust Company are denied in all respects.

Submit proposed order on notice consonant herewith.